NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MONTANA

In re

**PETER BRENTZ SMITH**,

Debtor.

Case No. **9:23-bk-90002-BPH**

**MEMORANDUM OF DECISION**

## I. Introduction.

In this Chapter 7 case, Debtor objected to creditor California Franchise Tax Board's ("FTB's") Proof of Claim No. 7-1 in the amount of $132,439.12 on the Claims Register ("FTB Claim"). Debtor argues that FTB inaccurately assessed tax liabilities incurred in the years 2008 and 2009. Debtor now challenges those assessments. For the reasons stated below, Debtor's objection is overruled and the FTB Claim is allowed in its entirety.

## II. Procedural Background.

Debtor filed an Objection to the FTB Claim on July 3, 2023, at ECF No. 55 ("Objection"). FTB filed a Response on August 1, 2023, at ECF No. 66. A hearing on the Objection was held on October 5, 2023. Shawn Murell and Debtor provided testimony. FTB's Exhibits 2-7 and Debtor's Exhibits A-K were admitted. In its Order issued on October 26, 2023, at ECF No. 89, the Court held the hearing on Debtor's Objection in abeyance and kept the evidentiary record open, pending Debtor's attempts to provide additional documentation supporting his Objection. Debtor subsequently issued subpoenas requiring TD Ameritrade and Charles Schwab to provide any responsive information related to Debtor's stock transactions for the years 2008 and 2009.

Prior to Debtor's Objection, the Chapter 7 Trustee initiated an adversary proceeding on June 15, 2023.[1] The Trustee sought to avoid certain alleged fraudulent transfers pursuant to 11 U.S.C § 544. Debtor and the Trustee entered into a compromise settlement in the underlying bankruptcy on October 31, 2023, at ECF No. 91 ("Settlement"). The Court approved the Settlement on November 27, 2023, at ECF No. 94. The Settlement is contingent upon resolution of Debtor's Objection; the total payment under the Settlement is calculated as the total amount of all Claims, including the FTB Claim plus associated fees and costs.

A final hearing on Debtor's Objection was held on March 6, 2024. Debtor's Exhibits

---

[1] 9:23-ap-9004-BPH.

1

AA, CC, DD, EE, FF, and GG were admitted.[2] The Court sustained FTB's objection to Debtor's Exhibit BB. BB was not admitted.

### III. Factual Background.

In 2008 and 2009, Debtor engaged in a series of stock transactions.[3] Debtor did not file a tax return reporting the results of these transactions in California. FTB received notice of these transactions from the IRS. FTB mailed Debtor letters stating that it had received information indicating Debtor needed to file tax returns for the years 2008 and 2009.[4] Although Debtor disputes that he lived in California in 2008 and 2009, at a minimum, he utilized a California address during this time span. FTB's letters were mailed to Debtor at 212 Western Drive, Point Richmond, CA 94801 ("California Address") and PO Box WWP Ketchikan, AK 99950-0280 ("Alaska Address").[5]

Working with the information available to it, FTB estimated Debtor's tax liability.[6] FTB mailed Notices of Proposed Assessments ("Notice") to the California Address and Debtor's Alaska Address.[7] The Notice explained that the assessments would become final if he did not respond or contest the assessment within a fixed period of time.[8] Debtor did not respond or challenge the assessment.

Debtor subsequently filed bankruptcy in Alaska in 2010.[9] In Debtor's Alaska petition and schedules, he indicated that he previously occupied the California Address and identified 2006-2009 as the dates of occupancy. Further, in Schedule E, Debtor identified two California tax authorities - Contra Costa County and the State Board of Equalization - as creditors with general unsecured priority claims. Debtor listed the debt to Contra Costa County as property tax on a

---

[2] These exhibits were introduced as Debtor's Exhibits A-G on March 1, 2024, at ECF No. 108. However, Debtor previously introduced Exhibits A-K at the October 5, 2023, hearing and the evidentiary record was kept open. For clarity, the Court refers to the exhibits introduced by Debtor at the March 6, 2024, hearing as Exhibits AA-GG.

[3] Ex. 2; Ex. 5.

[4] Ex. 3; Ex. 6.

[5] *Id.* Debtor does not dispute this is the mailing address for his residence in Alaska.

[6] Ex. 4; Ex. 7.

[7] Ex. 3; Ex. 6.

[8] Ex. 4; Ex. 7.

[9] Case No.10-00765 in the Bankruptcy Court for the District of Alaska. The Court granted the FTB's Motion for Judicial Notice of the Alaska petition in its Order issued on August 25, 2023, at ECF No. 68.

boat incurred in 2008 and the debt to the State Board of Equalization as use tax incurred on March 31, 2008. Finally, Debtor's title to his sailboat shows that the boat was previously titled in California prior to 2011.[10]

Debtor testified that he did not file tax returns in California because he took overwhelming losses in the years of 2008 and 2009. Debtor further testified that, during these years, he lived on a sailboat and was a resident of Alaska. Any mail sent to his California Address was received by a friend of Debtor's. Debtor was supposed to receive any mail from this friend, but his friend failed to deliver anything received from FTB. Debtor testified that he did not live in California in 2008-2009, the California Address was only a temporary address, and FTB did not mail any letters to his Alaska Address.

Murell testified that he works in the accounts receivable management division of FTB. This division is primarily responsible for the collection of unpaid debts. FTB routinely receives information from the IRS. In this case, Murell explained that FTB received a report of Debtor's income from the IRS, based on various stock transactions made by Debtor in the years 2008 and 2009. The IRS supplied Debtor's name and social security number. Using this information, FTB determined that Debtor resided at the California Address. Murell further testified that the California Address was associated with each income record.

Murell explained that the information received from the IRS only shows gross proceeds from Debtor's transactions. Recognizing that this information does not represent the true income, FTB uses a gain rate of 21% to determine Debtor's tax liability to account for any losses from the reported income.[11] Murell stated that prior to the assessments becoming final, FTB attempted to reach Debtor at both his California Address and Alaska Address multiple times. The Notice shows that it was sent to the Alaska Address.[12] Murell also testified that FTB called and spoke with Debtor on at least one occasion.

IV.   Parties' Arguments.

A. Debtor's Argument.

Debtor argues that his Objection to the FTB Claim should be sustained for three reasons. First, FTB relied upon inaccurate information when it calculated its proposed tax assessments based on TD Ameritrade Clearing Inc.'s report of certain transactions made by Debtor in the years 2008 and 2009. Second, Debtor argues that he never received the Notices of Proposed Assessment from FTB and could not respond to them as a result. Third, Debtor argues he lived in Alaska, rather than California during the years of 2008 and 2009.

---

[10] Ex. FF.

[11] *Id.*

[12] Ex. 6.

B. FTB's Argument.

FTB argues that it relied on the information it had received to estimate Debtor's tax liability. FTB additionally argues that when the time to challenge its assessment expired, the assessments became final by operation of law. FTB further argues that it mailed both the California Address and Alaska Address, and Debtor's Alaska bankruptcy petition and schedules indicate that Debtor occupied the California Address during the years of 2008 and 2009.

V. Applicable Law.

A. Proofs of Claim generally.

A creditor's claim is a "right to payment, whether or not such right is reduced to judgment, . . . unliquidated, fixed, contingent, . . . disputed, undisputed, legal, [or] equitable." 11 U.S.C. § 101(5)(A). A creditor asserts this "right to payment" through the filing of a proof of claim in a debtor's bankruptcy case. 11 U.S.C. § 501. A proof of claim is deemed allowed and constitutes prima facie evidence of the validity and amount of the claim, unless a party in interest objects. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). Upon objection, the proof of claim provides some evidence as to its validity and amount and mere objection is not enough to overcome this presumption. *Boruff v. Cook Inlet Energy LLC (In re Cook Inlet Energy LLC)*, 583 B.R. 494, 501 (B.A.P. 9th Cir. 2018). To defeat the claim, the objecting party must come forward and "present evidence with probative value equal to that of the proof of claim to rebut the claim." *Id.* Further, "[i[f the objecting party successfully rebuts the presumption, the claimant bears the burden of proof to show by a preponderance of the evidence that its claim is valid." *Id.* The ultimate burden of persuasion remains at all times upon the claimant. *Id.*

When a party in interest files an objection to a proof of claim, it "creates a dispute which is a contested matter" within the meaning of Fed. R. Bankr. P. 9014 that must be resolved after notice and opportunity for hearing upon a motion for relief. *Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000). After notice and hearing, the bankruptcy court then determines:

> the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that -- (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . .

11 U.S.C. § 502(b)(1).[13]

---

[13] Ordinarily, a chapter 7 debtor does not have standing to challenge a proof of claim because an insolvent debtor has no pecuniary interest in the distribution of assets among creditors. *Wellman v. Ziino (In re Wellman)*, 378 B.R. 416 (published in full-text format at 2007 Bankr. LEXIS 4291, at *1, n.5) (B.A.P. 9th Cir. 2007). However, Debtor has standing here because the Settlement he reached with the Trustee hinges upon the outcome of his Objection to the FTB's Claim.

### B. Tax Liability Proof of Claim.

In this case, FTB's Claim stems from tax liabilities it assessed against Debtor. 11 U.S.C. § 505 vests bankruptcy courts with broad jurisdiction to determine tax liabilities arising either before or after the filing of a case under the Bankruptcy Code. The burden of proof for a tax claim in bankruptcy is determined by state law. *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000).

Under California law, the burden of proof is on the taxpayer. *Dicon Fiberoptics, Inc. v. Franchise Tax Bd.*, 274 P.3d 446, 450-51 (Cal. 2012). The taxpayer bears the burden of proving the tax assessment is incorrect and must also produce evidence to establish the proper amount of tax. *Id.* The taxpayer cannot simply claim error and shift the burden to the FTB to justify the tax. *Id.* at 451.

Here, Debtor bears the burden of proving the tax assessment is incorrect and establishing the proper amount of tax owed. Debtor has done neither. Instead, Debtor repeatedly argues that any tax should be assessed only after his basis in the stock was determined. Debtor explained to do so, any assessment needs to account for both the purchase price and sale of any stock and introduced Ex. AA at the final hearing. When the Court pressed Debtor on the incomplete nature of Ex. AA (certain stocks were only represented as sold without a corresponding purchase price), Debtor informed the Court that the documents were incomplete and there was no way to track each trade for a portion of the stock transactions.

Notwithstanding this admission, Debtor attempted to shift the burden of proof to FTB by claiming they errored in their assessments because they did not have the information necessary to calculate the tax. This burden shifting is impermissible under California law. As FTB completed the assessment without a timely response or objection, Debtor is required to prove the tax assessment is incorrect and establish the proper amount of tax. Debtor has not met his burden because the documents he needs to do so – documents evidencing the buy side of transactions – are no longer available. The passage of 15 years between the occurrence of the transactions that are the subject of the tax assessment and present day has made it difficult for Debtor to obtain the information he needs to calculate the tax liability with certainty. Absent this information, FTB's assessment reflects the only calculation available for the Court to consider.

The Court could end its analysis here. However, for Debtor's benefit, the Court will address the merits of Debtor's Objection.

### C. The FTB's assessment became final as operation of law and Debtor has produced no evidence proving the assessment was incorrect or the proper amount of tax.

#### 1. Failure to timely challenge resulted in a final assessment.

Under California law, every person who meets the minimum filing requirements is required to file a state income tax return, report income, and pay any tax due to FTB. Cal. Rev. & Tax. Code § 18501. When it appears that a taxpayer has failed to file a return in a year in which the taxpayer owes tax, the FTB "may require a return … or may make an estimate of the net

income, from any available information, and may propose to assess the amount of tax, interest, and penalties due." Cal. Rev. & Tax. Code § 19087. FTB sends Notices of Proposed Assessments to the delinquent taxpayer. Cal. Rev. & Tax. Code § 19041. These notices propose assessed state taxes for each year that a taxpayer did not submit a return. Cal. Rev. & Tax. Code § 19033. The notices also indicate that if a taxpayer disagrees with any of the calculations of state tax liability contained within, the taxpayer needs to submit a formal protest within 60 days to FTB, lest the assessments become final. Cal. Rev. & Tax. Code § 19041. Debtor did not file any belated formal tax returns or protest any of the assessments, and the assessments became "final by operation of law." *Sienega v. Cal. Franchise Tax Bd. (In re Sienega),* 18 F.4th 1164, 1167 (9th Cir. 2021).

Here, the time to challenge FTB's assessment of the taxes elapsed long ago, and FTB presented credible evidence regarding its method of calculating proposed assessments. Debtor's argument that the FTB's assessment is inaccurate because it did not have all the information required to accurately calculate the tax due in 2008 and 2009 is unpersuasive. Debtor's position is incredible because it seeks to reward a taxpayer that fails to file a tax return, waits more than ten years (almost 15 years in this case) to challenge the assessment and then argues the taxing authority's calculation relied on incomplete or insufficient information to accurately assess any outstanding tax liability. Such an outcome would "encourage taxpayer mischief, a result this Court is compelled to avoid." *In re Vignola*, 377 B.R. 271, 281 (Bankr. N.D.Cal. 2007).

**2. FTB's assessment methodology was not unfair, given the information available at the time.**

FTB is authorized to use information from other sources to estimate income if a taxpayer has failed to file a return. *Bates v. Franchise Tax Bd.*, 124 Cal. App. 4th 367, 366 (Cal. App. Ct. 2004). In this case, FTB used the information provided by the IRS to estimate Debtor's tax liability. Murrell testified to the methodology behind the 21% gain rate applied to Debtor's gross proceeds to determine Debtor's tax liability. His testimony was credible, and Debtor did not seriously dispute this method of assessing tax liability, beyond blanket statements that it was impossible to accurately assess taxes without having a complete understanding of the transactions at question.

**3. Debtor has failed to offer an alternative calculation or assessment.**

Even if Debtor had all of the necessary documents, he has failed meet his burden and offer an alternative assessment as to the proper amount of tax owed. In this case, Debtor issued subpoenas and requested documents from TD Ameritrade and Charles Schwab. Debtor argues that in order to accurately calculate the tax liability, one must at a minimum know the acquisition as well as the sale price of stock involved in the trade that is being taxed. Despite having received various documents in response to his subpoenas, Debtor has not received any documents that identify the acquisition price associated the stock trades that are the basis of FTB's 2008-2009 assessment. In essence, Debtor's position seems to be because FTB did not have all the information needed to accurately assess an amount in 2008 and 2009 and they continue to lack necessary information needed, he should have no tax liability.

Debtor's focus on the merits and the absence of necessary information to make an

accurate assessment today fails to recognize the necessity of challenging the assessment in 2008-2009, rather than 15 years later, when documents and information are no longer readily available. Given the information available, the Court cannot conclude that FTB's 2008 and 2009 assessments were not fair. Further, even if Debtor had persuaded the Court that the assessments were unfair, it appears he also lacks the needed information to provide the Court with a calculation of the alternative tax he asserts should have been assessed. Although he contends any calculation by FTB is flawed because FTB did not have the acquisition price and could not accurately calculate the gain or loss, any position he asserts suffers from the same deficiency, underscoring the importance of addressing these matters when they arise, not years later.

Debtor cannot merely claim error and shift the burden to FTB. Debtor failed to offer an alternative calculation or assessment. This Court finds that the FTB's assessment of tax due was fair in light of the information available to it at the time the assessment was calculated.

### D. Debtor has not rebutted the presumption of receipt of mail.

Mail that is properly addressed, stamped and deposited into the mail is presumed to be received by the addressee. *In re Bucknum*, 951 F.2d 204, 207 (9th Cir. 1991). This presumption can only be overcome by clear and convincing evidence that the mailing was not, in fact, accomplished. *Id.* It is not enough to simply state that an addressee did not receive the letter, as such self-serving declarations of non-receipt generally do not suffice to rebut the presumption of receipt. *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 963 (9th Cir. 2001) (the presumption of receipt is meant to prevent a "swearing contest" between parties).

FTB presented evidence that it sent mail to Debtor's California Address. Debtor presented testimony that he tasked a friend with receiving and forwarding his mail at his California Address while he lived on a sailboat in Alaska. This individual did not do so. While unfortunate, this is not enough to overcome the presumption that Debtor received the properly addressed, stamped, and deposited mail sent by FTB.

Debtor further argued that he did not receive notice from FTB at his Alaska Address. However, FTB provided evidence that it sent a Notice to the Alaska Address.[14] Conversely, Debtor provided no evidence that he did not receive the Notice at this address, other than a self-serving declaration of non-receipt. As a result, Debtor did not rebut the presumption of receipt of mail.

### E. Debtor's argument that he did not live in California in 2008 and 2009 is at odds with his Alaska bankruptcy petition and schedules.

Signing a bankruptcy petition and its schedules requires that a debtor certify under penalty of perjury that the information provided is true and accurate. Debtor argues that he did not live in California during the years of 2008 and 2009. This position is inconsistent with the prior position Debtor took in his Alaska bankruptcy case filed in 2010. Debtor indicated in his Statement of Financial Affairs that he previously resided at the California Address and identified 2006-2009 as the dates of occupancy. He also identified various California taxing authorities as

---

[14] Ex 6.

creditors in that time period.

The Court cannot reconcile Debtor's current position with the one he took in his Alaska bankruptcy. Further, Debtor's acknowledgement that he enlisted a friend's help in California to forward mail he received at the California Address and Debtor's boat's registration in California prior to the year 2011 only highlights this inconsistency. Whether Debtor's statements now or the previous representations in his Statement of Financial Affairs in his Alaska filing were true does not impact the merits, but the inconsistency weighs against Debtor's overall credibility.

## VI. Conclusion.

Debtor had an opportunity to challenge FTB's assessment over a decade ago. Debtor did not do so. Debtor had a further opportunity here to "present evidence with probative value equal to that of the proof of claim to rebut the claim." Debtor's ability to do so was severely hindered by the passage of time, and an inability to obtain documents or other information that showed the tax assessment was incorrect. Although the methodology employed by FTB lacks the precision Debtor would like, when taxpayers fail to file a tax return or otherwise respond, FTB must calculate the assessment using the information it has available. In this case, it did precisely that. Further, although Debtor disputes FTB's calculation of the assessment and tax due, he failed to produce any evidence that supports an alternative. Debtor has failed to rebut the presumption of validity of FTB's Claim, or otherwise establish any basis for sustaining his Objection. An Order will be entered separately.

Dated March 18, 2024.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana